POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUOFENG MA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO & COMPANY, CHARLES W. SCHARF, and JOHN R. SHREWSBERRY, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>DEMAND FOR JURY TRIAL</u> |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Guofeng Ma ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Wells Fargo & Company ("Wells Fargo" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Wells Fargo securities between April 5, 2020 and May 5, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Wells Fargo is a diversified financial services company that provides banking, investment, mortgage, and consumer and commercial finance products and services to individuals, businesses, and institutions in the U.S. and internationally.

3. On April 5, 2020, Wells Fargo announced that it had received strong interest in the Paycheck Protection Program ("PPP"), a program under the Coronavirus Aid, Relief, and

Economic Security Act (the "CARES Act"), and was targeting to distribute a total of $10 billion to small business customers under the requirements of the PPP.

4.      On April 8, 2020, the Federal Reserve announced that it would allow Wells Fargo to exceed the asset cap that it had imposed on Wells Fargo in 2018 after revelations that the Company had opened millions of accounts in customers' names without their permission, a change which would allow Wells Fargo to make additional small business loans as part of the PPP.

5.      That same day, Wells Fargo issued a press release stating, in relevant part, that, "beginning immediately, in response to the actions by the Federal Reserve, [Wells Fargo] will expand its participation in the [PPP] and offer loans to a broader set of its small business and nonprofit customers subject to the terms of the program."

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Wells Fargo planned to, and did, improperly allocate government-backed loans under the PPP, and/or had inadequate controls in place to prevent such misallocation; (ii) the foregoing foreseeably increased the Company's litigation risk with respect to PPP allocation, as well as increased regulatory scrutiny and/or potential enforcement actions; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

7.      On April 19, 2020, after at least one lawsuit was filed against the Company, reports emerged that Wells Fargo may have unfairly allocated government-backed loans under the PPP. For example, *USA Today* reported that "[t]he lawsuit filed on behalf of small business owners on Sunday alleges that Wells Fargo unfairly prioritized businesses seeking large loan amounts, while the government's small business agency has said that PPP loan applications would be processed on a first-come, first-served basis." According to the lawsuit, "[t]he move by Wells Fargo meant

that the bank would receive millions more dollars in processing fees," and, "[m]aking matters worse, Wells Fargo concealed from the public that it was reshuffling the PPP applications it received and prioritizing the applications that would make the bank the most money."

8. Following this news, Wells Fargo's stock price fell more than 5% over two trading days to close at $26.84 per share on April 21, 2020.

9. Finally, on May 5, 2020, Wells Fargo filed a quarterly report on Form 10-Q with the SEC, disclosing, in addition to multiple PPP-related lawsuits initiated against the Company, that Wells Fargo had "received formal and informal inquiries from federal and state governmental agencies regarding its offering of PPP loans."

10. Following this news, Wells Fargo's stock price fell by more than 6% over two trading days from its closing price on May 4, 2020, closing at $25.61 per share on May 6, 2020.

11. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

14. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Wells Fargo is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

15. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

16. Plaintiff, as set forth in the attached Certification, acquired Wells Fargo securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17. Defendant Wells Fargo is a Delaware corporation with principal executive offices located at 420 Montgomery Street, San Francisco, California 94104. Wells Fargo common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "WFC."

18. Defendant Charles W. Scharf ("Scharf") has served as Wells Fargo's Chief Executive Officer at all relevant times.

19. Defendant John R. Shrewsberry ("Shrewsberry") has served as Wells Fargo's Chief Financial Officer at all relevant times.

20. Defendants Scharf and Shrewsberry are sometimes referred to herein as the "Individual Defendants."

21. The Individual Defendants possessed the power and authority to control the contents of Wells Fargo's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Wells Fargo's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Wells Fargo, and their access to material information available to them but not to the public,

the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

22. Wells Fargo and the Individual Defendants are sometimes collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23. Wells Fargo is a diversified financial services company that provides banking, investment, mortgage, and consumer and commercial finance products and services to individuals, businesses, and institutions in the U.S. and internationally.

24. Following the onset of the COVID-19 pandemic, the U.S. federal government passed the CARES Act, which, among other things, set forth the PPP in an effort to aid small businesses during the economic downturn that resulted from the pandemic. Funded by the U.S. Small Business Administration ("SBA"), the PPP authorizes up to $349 billion in forgivable loans to small businesses to pay their employees during the COVID-19 crisis. All businesses—including nonprofits, veterans organizations, Tribal business concerns, sole proprietorships, self-employed individuals, and independent contractors—with 500 or fewer employees are eligible to apply for PPP loans.

### Materially False and Misleading Statements Issued During the Class Period

25. The Class Period begins on April 5, 2020, when Wells Fargo issued a press release entitled "Wells Fargo Receives Strong Interest in the Paycheck Protection Program (PPP)" (the "April 5, 2020 Press Release"). At the top of that press release, Wells Fargo highlighted the following three points: (i) "Intake from customers indicates Wells Fargo has reached its capacity

of $10 billion to lend under the PPP"; (ii) "Will focus lending to nonprofits and small businesses with fewer than 50 employees"; and (iii) "Will give fees received under program to nonprofits focused on small business."

26. In the body of the April 5, 2020 Press Release, Defendants represented that "Wells Fargo . . . is targeting to distribute a total of $10 billion to small business customers under the requirements of the PPP and will focus on serving two segments of its customer population: nonprofits and small businesses with fewer than 50 employees"; that "[t]he company has received forms from customers expressing interest in the PPP that it expects will fill the company's capacity to lend under the program, as it continues to operate under existing asset cap limitations"; that "fees generated through the program will be distributed as charitable grants to nonprofits that support small businesses, which is a focus of Wells Fargo's philanthropic efforts"; and that "Wells Fargo will review all expressions of interest submitted by customers via [its] online form through April 5 and provide them with updates in the coming days."

27. The April 5, 2020 Press Release also quoted Defendant Scharf, who touted, in relevant part, that "[s]ince the beginning of this health crisis, Wells Fargo has provided substantial credit and liquidity to [its] customers to help them weather these uncertain times"; that, "[i]n the month of March alone, [Defendants] extended nearly $70 billion in new and increased commitments and outstanding loans to customers including consumers, small businesses, and companies in the US"; and that Defendants "are focusing [their] efforts under the [PPP]" on "small businesses with fewer than 50 employees and nonprofits [that] often have fewer resources."

28. With specific respect to Wells Fargo's regulatory compliance, Defendant Scharf assured investors that "[s]ince [he] arrived at the company, [he] ha[s] been clear that [Defendants] will direct all resources necessary to do the work required by . . . regulators and [Defendants] are in the process of doing so."

29. On April 8, 2020, the Federal Reserve announced that it would allow Wells Fargo to exceed the asset cap that it had imposed on the Company in 2018. The asset cap had been imposed under a consent order after revelations that the Company had opened millions of accounts in customers' names without their permission. The Federal Reserve's permission to exceed the asset cap would allow Wells Fargo to make additional small business loans as part of the PPP.

30. That same day, Wells Fargo issued a press release entitled "Wells Fargo to Expand Participation in the Paycheck Protection Program (PPP)" (the "April 8, 2020 Press Release"). That press release touted, in relevant part, that "beginning immediately, in response to the actions by the Federal Reserve, [Wells Fargo] will expand its participation in the [PPP] and offer loans to a broader set of its small business and nonprofit customers *subject to the terms of the program*" (emphasis added).

31. The April 8, 2020 Press Release also quoted Defendant Scharf, who asserted, in relevant part, that "[w]hile [Defendants] are pleased to be able to help more small businesses through the [PPP], [they] note that the Federal Reserve's action does not – and should not – in any way relieve [Defendants] of [their] obligations under the consent order"; that he has "said consistently since arriving at Wells Fargo that management has the responsibility to do the work necessary under the consent order"; that "[t]he consent order exists because of deficiencies that have existed at Wells Fargo for years"; that "[t]he work required under the consent order is clear, has been outstanding for too long, and is a prerequisite for consideration of the asset cap being lifted"; that "work on [Defendants'] consent orders is [their] top priority and [they] are devoting all necessary resources"; and that "[u]ntil [their] work is completed to the Federal Reserve's satisfaction, [Defendants] will continue to actively make decisions on how to allocate [their] balance sheet to support the needs of [their] customers under the existing asset cap." All the foregoing plainly signaled to investors that, in light of prior violations by the Company,

Defendants were taking their remediation efforts to comply with relevant regulatory requirements seriously, and that Defendants were actively ensuring the future compliance of the Company with all necessary requirements.

32.  On April 14, 2020, Wells Fargo hosted an earnings call with investors and analysts to discuss the Company's performance in the first quarter of 2020.  On the call, Defendant Scharf touted, in relevant part, that Defendants "extended [their] participation in the PPP program and hope to provide significant relief to [their] small business customers"; that Defendants "are quickly ramping up [their] processing capacity to respond to the significant demand [they]'ve seen"; that, "[t]hrough April 10, [they]'ve received more than 370,000 . . . indications of interest from [their] customers"; and that Defendants "are working with industry groups and the US Treasury in preparation to distribute millions of economic impact payments to Americans as quickly as possible."

33.  The statements referenced in ¶¶ 25-28 and 30-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Wells Fargo planned to, and did, improperly allocate government-backed loans under the PPP, and/or had inadequate controls in place to prevent such misallocation; (ii) the foregoing foreseeably increased the Company's litigation risk with respect to PPP allocation, as well as increased regulatory scrutiny and/or potential enforcement actions; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

34.  On April 19, 2020, after at least one lawsuit was filed against the Company, reports emerged that Wells Fargo unfairly allocated government-backed loans under the PPP.  For

example, *USA Today* reported that "[t]he lawsuit filed on behalf of small business owners on Sunday alleges that Wells Fargo unfairly prioritized businesses seeking large loan amounts, while the government's small business agency has said that PPP loan applications would be processed on a first-come, first-served basis." The article continued by noting that, according to the lawsuit, "[t]he move by Wells Fargo meant that the bank would receive millions more dollars in processing fees," and, "[m]aking matters worse, Wells Fargo concealed from the public that it was reshuffling the PPP applications it received and prioritizing the applications that would make the bank the most money."

35. *Class Actions Reporter*, a daily e-newsletter dedicated to reporting on class actions, also discussed the lawsuit, and cited prior statements by Wells Fargo, noting that the Company's conduct may have violated the CARES Act:

> The complaint quotes the text of the bill as saying, "[T]he Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in the underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially economically disadvantaged individuals…, women, and business in operation for less than 2 years."
>
> Wells Fargo claimed to back this priority. The complaint quotes its CEO as saying, "While all businesses have been impacted by this crisis, small businesses with fewer than 50 employees and nonprofits often have fewer resources. Therefore, we are focusing our efforts under the Paycheck Protection Program on these groups."
>
> However, the complaint alleges that this was not how Wells Fargo handled the applications it received: "Wells Fargo prioritized and front-loaded applications with higher loan amounts. This shown by comparing data from loans processed between April 3, 2020 (when the PPP started) and April 13th and April 16th (when the program ran out of money)."
>
> According to the complaint, Wells Fargo did this because it earned higher fees on those loans.
>
> Wells Fargo's words matters, the complaint says, because small businesses were entitled to apply only for one loan. If they applied with one bank, they could not then submit another application with another. Had they known that Wells Fargo would prioritize larger businesses, they would have applied with a different lender.

9

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

36. Following this news, Wells Fargo's stock price fell more than 5% over two trading days to close at $26.84 per share on April 21, 2020.

37. Finally, on May 5, 2020, Wells Fargo filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the first quarter of its fiscal year 2020. In addition to noting that "[p]laintiffs have filed putative class actions in state and federal court in Texas, California, and Colorado against the Company," which seek "damages and injunctive relief related to the Company's offering of [PPP] loans under the [CARES] Act," the quarterly report disclosed that "*[t]he Company has also received formal and informal inquiries from federal and state governmental agencies regarding its offering of PPP loans*" (emphasis added).

38. Following this news, Wells Fargo's stock price fell by more than 6% over two trading days from its closing price on May 4, 2020, closing at $25.61 per share on May 6, 2020.

39. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Wells Fargo securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Wells Fargo securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Wells Fargo or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Wells Fargo;

- whether the Individual Defendants caused Wells Fargo to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Wells Fargo securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Wells Fargo securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Wells Fargo securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

49. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Wells Fargo securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Wells Fargo securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Wells Fargo securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Wells Fargo's finances and business prospects.

53. By virtue of their positions at Wells Fargo, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Wells Fargo, the Individual Defendants had knowledge of the details of Wells Fargo's internal affairs.

55. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Wells Fargo. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Wells Fargo's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Wells Fargo securities was artificially inflated throughout the Class Period. In

ignorance of the adverse facts concerning Wells Fargo's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Wells Fargo securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

56.     During the Class Period, Wells Fargo securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Wells Fargo securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Wells Fargo securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Wells Fargo securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

59. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. During the Class Period, the Individual Defendants participated in the operation and management of Wells Fargo, and conducted and participated, directly and indirectly, in the conduct of Wells Fargo's business affairs. Because of their senior positions, they knew the adverse non-public information about Wells Fargo's misstatement of income and expenses and false financial statements.

61. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Wells Fargo's financial condition and results of operations, and to correct promptly any public statements issued by Wells Fargo which had become materially false or misleading.

62. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Wells Fargo disseminated in the marketplace during the Class Period concerning Wells Fargo's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Wells Fargo to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Wells Fargo within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Wells Fargo securities.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

63. Each of the Individual Defendants, therefore, acted as a controlling person of Wells Fargo. By reason of their senior management positions and/or being directors of Wells Fargo, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Wells Fargo to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Wells Fargo and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Wells Fargo.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 4, 2020

        Respectfully submitted,

        POMERANTZ LLP

        */s/ Jennifer Pafiti*
        Jennifer Pafiti (SBN 282790)

1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS